## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**CATHERINE E. WHITEHEAD,**

     **Plaintiff,**

**vs.**                       **Case No. 4:21cv245-MW/MAF**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,**

     **The Commissioner.**

_____/

## REPORT AND RECOMMENDATION

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Supplemental Security Income (SSI). Tr. 195-201.[1] After careful consideration of the record, for the reasons stated below, the decision of the Commissioner should be REVERSED, and the case REMANDED.

## I.    Procedural History

On or about October 10, 2019, Plaintiff Catherine E. Whitehead filed a pro se application for Supplemental Security Income benefits alleging her disability began

_____

[1] References to the record in this case will be to Tr. followed by the relevant page number.

on February 1, 2001. Tr. 195-201.  Other than stating bluntly that Plaintiff was disabled as of February 1, 2001, the application provides no further information regarding any alleged disability.   Tr. 195.

Plaintiff's application was denied initially on March 30, 2020.  Tr. 114-17. Plaintiff filed a pro se request for reconsideration on April 6, 2020, complaining of chronic kidney infections, gas in her heart and bowels, renal infection/sepsis, and that she was short on funds. Tr. 118-121. Most of Plaintiff's request for reconsideration is recounted on the envelope and loose notecards she submitted, in a rambling, illegible harangue regarding her current financial and physical condition. Tr. 120-21.   Plaintiff's Request for Reconsideration was denied on July 16, 2020. Tr. 125-31.

Plaintiff requested an administrative hearing (Tr. 132-35), noting that she disagreed with the denial of her claim because she could not

> accept your argument that medical care can help my affliction –
> after your having seen a picture of my ear following its cleaning
> with mineral oil at the medical facility you sent me to.

Tr. 132.  Because of COVID and Plaintiff's inability to attend a video hearing, a telephonic hearing was scheduled for December 1, 2020. Tr. 150-54.  Plaintiff responded to that notice with a handwritten missive about her inability to afford "air time" so that she could participate in the telephone hearing.   Tr. 168.

Administrative Law Judge (ALJ) Joshua R. Heller presided over the telephonic hearing on June 5, 2020. Tr. 31-69.  Plaintiff was informed of her right to counsel but chose to proceed without the assistance of an attorney or other representative.  Tr. 37-41.  Plaintiff and William Harvey, an impartial vocational expert (VE), testified at the hearing. Tr. 37-62, 66-68. (Plaintiff's testimony); Tr. 62-66 (Harvey testimony).  During the hearing, ALJ Heller admitted medical records and other exhibits relating to Plaintiff's claims, specifically, "1- through 4-A, 1-through 9-B, 1- through 10-D, 1-through 27-E" and 1- through 6-F[2]. Tr. 34.  ALJ Heller also received photographs (some of Plaintiff's cat, and several of Plaintiff's sores) (Tr. 70-71; 73-80); her transcript from Mount Holyoke College (Tr. 72); and a written narrative from Plaintiff that details the illnesses and conditions which plague her, as well as a description of the professions she pursued.  Tr. 80-81.

On December 31, 2020, ALJ Heller issued his Decision denying Plaintiff's application for benefits. Tr. 12-23. ALJ Heller purportedly considered "all the evidence" and found that Plaintiff has not been under a disability within the meaning of the Social Security Act since October 10, 2019, the date the application was filed.

---

[2]  Exhibit F includes records from Apalachee Center from June 2019, from the Apalachee Center from May 2019, from the Wakulla County Urgent Care & Diagnostic Center, a Consultative Examination Report from Dr. Kenneth Long, a Consultative Examination Report from Dr. Graham Whitaker, and a DDS Medical Evaluation Document.   It is not clear who submitted these materials.

Tr. 12. Plaintiff requested a Review of Hearing Decision on or about January 18, 2021. Tr. 170-92.   That request for review contains a twenty-page scattered discussion of Plaintiff's many ailments and issues with ALJ Heller's decision.   On May 28, 2021, the Appeals Council denied review, making ALJ Heller's decision the final decision of the Commissioner. Tr. 1-4.

Plaintiff filed her complaint with this Court on June 17, 2021.   ECF No. 1. As with her other submissions, Plaintiff's Complaint is little more than a narrative of her various concerns and ailments (and those of her now deceased cat), without any coherent thought regarding why the underlying decision should be reversed. ECF No. 1.   The Commissioner filed an answer on October 21, 2021.   ECF No. 10. Plaintiff filed a memorandum in support of her position which, again, amounted to little more than a narrative of her numerous problems and concerns and did little to refute ALJ Heller's decision.   ECF No. 13.   The Commissioner filed a responsive memorandum in support of the Commissioner's Position.   ECF Nos. 15.   Plaintiff filed a Supplemental Memorandum (ECF No. 16), which the Court reluctantly accepted.   ECF No. 17.

## II.   ALJ Heller's findings

ALJ Heller properly articulates and follows the five-step sequential evaluation process for determining disability.   See 20 CFR § 416.920(a).   In doing so, ALJ Heller made the following findings:

1.    **The Claimant has not engaged in substantial gainful activity since October 10, 2019, the application date**. Tr. 14. This fact is not in dispute, as Plaintiff confirmed she was not making money despite her effort to find part-time employment, to do some volunteer work, and to write her own book.   Tr. 42-44.

2.    **The Claimant has the following severe impairment:   episodic mood disorder; low hearing; and arthritis**.   Tr. 14.   ALJ Heller found support in the medical evidence for episodic mood disorder, adjustment disorder, low hearing, and arthritis.   ALJ Heller went on to conclude that these impairments were severe as they resulted in functional limitations or restrictions having more than a minimal effect on Plaintiff's ability to do basic work activities.   Tr. 14.

However, ALJ Heller did not find that the medical record supported the position that Plaintiff's right foot infection constituted a severe impairment as it did not result in any significant functional limitation and it improved with medication and/or treatment.   Tr. 14.   ALJ Heller also rejected Plaintiff's subjective complaints of irritable bowel syndrome, Lyme disease, history of aneurysms with resulting blackouts, dental caries, vertigo, renal failure, recurrent pneumonia, and recurrent gangrene as he concluded there was no objective diagnostic or radiological evidence from an acceptable medical source which demonstrated those conditions. Tr. 15; 321-430.   Nonetheless, ALJ Heller said he considered and generously

accommodated all of these conditions in determining Plaintiff's residual functional capacity.   Tr. 15.   Plaintiff contests this finding.

3.   **The Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.**   Tr. 15.   ALJ Heller states that he considered each of Plaintiff's impairments individually, and in combination, and that no acceptable medical source supported findings equivalent in severity to the criteria of any listed impairment. Specifically, ALJ Heller contends that he evaluated Plaintiff's history of episodic mood disorder in accordance with the Social Security Regulations.   ALJ Heller concluded that Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.

In evaluating the limitations resulting from Plaintiff's mental health disorders, ALJ Heller recounts and repeats the same activities of daily living to support his conclusions regarding each of the factors, finding that Plaintiff:

> performs her own personal hygiene and grooming, prepares meals daily, shops for household and personal items at the store, completes chores such as laundry, drives a car, has a state driver's license, gets rides from others, goes to doctor's appointments, picks up medication, manages her own finances, counts change, handles a savings account, purchases money orders, uses a checkbook, communicates with other via phone,

> uses a computer, watches television, reads books and periodicals
> (particularly likes reading French and Spanish language books
> per claimant), writes her own books (writes and sells her own
> books), cares for her cat (e.g. feed, water and bathe), goes outside
> daily and regularly interacts with members of the Community.

Tr. 15-16.

Based on these activities, ALJ Heller determined that Plaintiff's mental health impairments do not cause at least one extreme limitation or two marked limitations, and therefore do not satisfy the paragraph "B" criteria.   Tr. 16.   Further, ALJ Heller determined that the criteria "C" were not satisfied and that no state agency psychological consultant concluded that a mental listing was medically equaled.

Plaintiff does not believe she suffers from a mental health impairment, but does believe she has physical impairments which render her disabled. ECF No. 13, p. 2.

4.    **Claimant has the residual functional capacity to perform medium work as defined in 20 CFR § 416.967(c), except she can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; she can sit for 6 hours in an 8-hour workday; she can stand for 6 hours in an 8-hour workday; she can walk for 6 hours in an 8-hour workday; she can frequently operate foot controls with her right foot; she can frequently climb ladders, ropes, scaffolds, and balance; she can frequently work around unprotected heights and vibration; she can work in loud noise; she can occasionally interact with supervisors,**

**coworkers and the public; she is able to perform simple, routine tasks, and simple work related decisions as reasoning level 2 in the Dictionary of Occupational Titles (DOT), and she can adapt to occasional and gradual changes in the work setting.**

While ALJ Heller believed that Plaintiff had some level of functional limitation as a result of her impairments, he did not believe that those limitations were as significant as alleged by Plaintiff. Tr. 18. As noted by ALJ Heller, Plaintiff's alleged impairments are many: renal failure; recurrent gangrene; Lyme disease; digestive disorders; pain while physically exerting herself; trouble standing and walking; swelling and pain in her back, groin, legs, right foot and joints; irritable bowel syndrome; aneurysm with resulting blackouts; dental caries; vertigo; and recurrent pneumonia. Tr. 18. ALJ Heller also acknowledged that Plaintiff does not go to doctors or utilize traditional medical treatments, opting instead to take peppermint soaks, hibiscus tea, ginger root, Epsom salt, witch hazel, sublingual B12, and probiotics. Tr. 18. As a result, Plaintiff does not have objective medical records which support her alleged impairments or the treatments for same. Tr. 18-19. Additionally, ALJ Heller further concluded that the consultative examinations did not establish the level of limitation that merits a reduction to the light occupational base. Accordingly, ALJ Heller concluded that while Plaintiff suffers from medically determinable impairments which could be reasonably expected to

produce the alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence of record.   Tr. 19.

With respect to Plaintiff's potential mental health impairments, ALJ Heller notes that Plaintiff had two visits (June 2018 and May 2019) to the Apalachee Center to stabilize her during separate mental health crises.   Tr. 19; Tr. 321-406.   As noted by ALJ Heller, it was recommended that Plaintiff receive follow-up care, but there is no record of Plaintiff seeking or receiving such care.   Tr. 19.   Because Plaintiff does not believe in traditional medicine and refuses to see a doctor or medical professional for treatment, the only objective evidence available for review regarding her mental health conditions was the medical evidence from the consultative examinations.   Tr. 19.

In his Decision, ALJ Heller reviews the work of the state agency's consultants. His review is summarized herein:

Dr. Theodore Weber and Dr. Madelyn Miranda-DeCollibus:   ALJ Heller found the testimony of these state psychological consultants to be somewhat persuasive, but ultimately concluded that their opinions did not reflect the totality of the evidence because they did not have the benefit of reviewing all of the evidence received at the hearing level prior to making the opinions.   Tr. 20.   ALJ Heller

believed Plaintiff was more limited in adapting or managing herself (moderate rather than mild), based on "the objective evidence and the claimant's testimony."    Tr. 20.

Dr. Robert Steele:    ALJ Heller concurred with Dr. Steele's conclusion that Plaintiff is capable of medium work, but ultimately added additional limitations based on "objective evidence and the claimant's testimony."    Tr. 20.

Dr. Kerri Aaron:    ALJ Heller found Dr. Aaron's opinion to be somewhat persuasive, but found the Plaintiff to be more limited based on "the overall evidence received at the hearing level."    Tr. 20.    Dr. Aaron found Plaintiff's medically determinable impairments to be non-severe.    ALJ Heller agreed that there was little objective evidentiary support to corroborate Plaintiff's subjective complaints, but "nevertheless characterized [Plaintiff's] low hearing and arthritis as severe impairments" and reduced Plaintiff's range of work to medium work.    Tr. 20.

Dr. David Keen:    ALJ Heller concluded that Dr. Keen's opinion was supported by clinical examinations and testing, and, as a specialist, his opinion was entitled to greater weight.    Tr. 20.    Dr. Keen's objective examination demonstrated largely benign findings "other than some decrease in sensation of the right foot and decreased hearing."    Tr. 20.    Dr. Keen's findings were considered and generously accommodated in ALJ Heller's residual functional capacity finding.    Tr. 21.

Dr. Kenneth Long:    ALJ Heller discounted Dr. Long's opinion because he did not have the benefit of reviewing the "overall evidence received at the hearing

level." Tr. 21. According to ALJ Heller, Dr. Long "declined to offer any formal mental health diagnoses other than [to] Rule/Out diagnoses[;] and his objective mental status examination findings were largely benign other than somewhat rapid rate of speech and self-reported restless sleep." Tr. 21. Ultimately, ALJ Heller concluded that Dr. Long's opinion that Plaintiff suffered from significant psychological barriers to employment which may decrease with improved health and/or proper and consistent treatment was not supported by Dr. Long's objective examination, his diagnostic impressions, or other objective evidence of record.

Dr. Graham Whitaker:   ALJ Heller accepted the opinion of Dr. Whitaker, a board-certified ENT specialist, as being consistent with examinations and testing, as well as the record as a whole. ALJ Heller accepted Dr. Whitaker's opinion that Plaintiff had mild to moderate bilateral sensorineural hearing loss, found Plaintiff's hearing impairment to be severe, and accommodated those findings in his RFC finding. Tr. 21.

Kristen Seaquest, M.S., CCC-SLP:   ALJ Heller accepted Ms. Seaquest's view that Plaintiff does not meet listing 2.10 A or B for hearing impairment because that view is consistent with the July 2020 otologic examination.

In addition to the consultant professionals who provided opinions, Plaintiff's brother, James Whitehead, also provided a letter, suggesting that Plaintiff was schizophrenic. ALJ Heller rejected that lay opinion as not credible because it did

not come from an acceptable medical source, it came from an interested person, and it was not reflective of the totality of the evidence.

Based on his review of "the objective medical evidence of record, the claimant's subjective complaints, the treatment for Claimant's conditions", ALJ Heller concluded that Plaintiff had the ability to perform a reduced range of medium work.  Tr. 22.  Plaintiff contests this finding.

5.    **The Claimant has no past relevant work (20 CFR § 416.965).** Plaintiff does not contest this finding.

6.    **The Claimant was born on April 30, 1957, and was 62 years old, which is defined as an individual closely approaching retirement age, on the date the application was filed (20 CFR § 416.963).**   Plaintiff does not contest this finding.

7.    **The Claimant has at least a high school education (20 CFR 416.964).**  Plaintiff reported that she completed 12th grade and four or more years in college.   Tr. 224.   Thus, this fact is also not contested.

8.    **Transferability of job skills is not an issue because the Claimant does not have past relevant work (20 CFR § 416.968).**  This fact is also not contested.

9.    **Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in**

the national economy that the Claimant can perform **(20 CFR §§ 416.969 and 416.969(a)).** ALJ Heller, relying on the testimony of the VE, concluded that Plaintiff could perform medium work with some limitations. The VE identified three positions which Plaintiff would be able to perform even with her limitations: hand packager (DOT #920.587-018, medium, SVP2, unskilled); (2) industrial cleaner (DOT #381.687-018, medium, SVP2, unskilled); and (3) warehouse worker (DOT #922-687-058, medium, SVP2, unskilled). All of these positions have sufficient openings in the national economy (73,000; 89,000; and 205,000, respectively). Based on these available and appropriate positions ALJ Heller concluded that Plaintiff is not disabled. Plaintiff contests this finding.

Based on these findings, ALJ Heller concluded that Plaintiff has not been disabled since her application of October 10, 2019.

## III. Plaintiff's Claims

Plaintiff claims that the Commissioner erred in rejecting her claim. ECF No. 13. Unfortunately, as with the other memoranda submitted by Plaintiff throughout this case, her arguments are not very focused or responsive to the issues that are relevant to a determination of whether she is disabled. Rather, she gave a rambling narrative regarding the underlying administrative hearing, her various and numerous medical conditions, and the care that she has received. ECF No. 13; ECF No. 16; Tr. 70-81; 170-91; 229-59; 268-72; 274-78; 297-315. Most of these submissions

are nonsensical ramblings.   Even so, Plaintiff does raise some issues which warrant discussion.

First, in her Memorandum in Support of her Complaint, Plaintiff recognized that one of the challenges in this case is the lack of prior traditional medical care Plaintiff has received during the relevant period.   ECF No. 13, p. 1.   Plaintiff suggests that her lack of a medical history is driven by two facts:   (1) her lack of any perceived benefit from such care (she believes her organic remedies help more), and (2) her lack of funds to pay for such care.

Plaintiff then complains that the record of the proceedings contains inaccuracies and is otherwise incomplete.   ECF No. 13, p. 1.   She contends that the transcript is inaccurate, the records from the Apalachee Center contain errors, and her memoranda seeking review of ALJ Heller's Order was not considered.   ECF No. 13, pp. 1; 3-4.   Plaintiff also contests any suggestion that she may be suffering from bipolar disorder.[3]   ECF No. 13, p. 2.   She is not a male (implying that persons with bipolar are more likely male); she takes vitamin B (implying that bipolar is the result of a vitamin B deficiency); and she has not had any alcohol other than an ounce or two at college receptions years ago (implying that bipolar persons are more likely to abuse alcohol).   Tr. 2.   She apparently disagrees with any contention that she has

---

[3] While she will not agree that she suffers from bipolar disorder, Plaintiff does admit that she may be obsessive-compulsive.   ECF No. 13, p. 2.

a mental health condition that would render her disabled in any event, primarily because she believes such a finding would impact her ability to obtain a part time job. Tr. 174 (Plaintiff believes that a mental disability would limit her access to "part-time less-physically-demanding work options").

Plaintiff also contends that ALJ Heller ignored her arthritis and gangrene, which she believes would keep her from standing long enough to work the jobs mentioned by ALJ Heller, and said she cannot currently lift 50 pounds even occasionally. ECF No. 13, pp. 2-3. Plaintiff claims that gangrene, kidney pain, arthritis, renal infections, and injuries relating to a hit-and-run truck accident also render her disabled.

Plaintiff then devolves into a several page diatribe regarding her time at the Apalachee Center. ECF No. 13, pp. 4-5. She contests any allegation that she neglected or mistreated her cat – she states that the car she was in with the cat was not overheated while she was there, and the cat was comfortable and in the shade until seized by the police. Plaintiff further contends that she only developed a fever herself because of her renal infection, not because of the temperature of her car. Id. at 4. She further challenges any suggestion that she was treated with a fungicide at the Apalachee Center, apparently believing that any such treatment would exacerbate her conditions. Id. at 4. She reaffirms her home remedies – Epsom salts, basil, peppermint, orange oil, soaks, and coffee. Id. at 5.

Despite her clear incentive to argue otherwise, Plaintiff goes on to refute the Apalachee Center's suggestion that she had poor employment skills.   ECF No. 13, pp. 5-6.   She is multilingual; she has clerical training and has experience in billing, inventory, handling a switchboard, and keeping books; she's been a cashier; she's taught math; and she studied network engineering and line editing at Florida State University.   Id.   Plaintiff contends all of these skills were overlooked in evaluating her employability, though she believes she is only capable of part-time work now because of her medical issues.   ECF No. 16, p. 4.

For some reason, Plaintiff goes on to describe in graphic detail information regarding her menstrual cycles and challenges she faced due to her irregular and intense cycles.   ECF No. 13, p. 5-6.   Those conditions long predated her application here and are not relevant other than to demonstrate the problems Plaintiff has in communicating effectively.   These issues are only presented in this Report so that Plaintiff is aware that the undersigned fully reviewed her contentions, and her complaints were considered.

Plaintiff then expresses confusion about whether she reported to the police that she had anthrax and was the antichrist, or if she was just merely an atheist who believed in home remedies.   ECF No. 13, p. 7.   This discussion is also irrelevant, other than with respect to the issue of whether Plaintiff can adequately and appropriately communicate with others and can manage her own affairs.

Plaintiff discusses her employment history, arguing that she may not have received as much social security credit for her prior employment as she deserved. ECF No. 13, p. 8-9. This information is irrelevant to the query whether Plaintiff is disabled. Again, Plaintiff is advised that the Court has considered such information, but it is simply not relevant here.

Plaintiff filed a Supplemental Memorandum (ECF No. 16) which recounts that her health has continued to suffer and that she needs a prompt ruling from this Court for financial reasons. Much of that Supplemental Memorandum is repetitive of her prior submissions. Again, Plaintiff is specifically advised that the Court has considered the Supplemental Memorandum.

Ultimately, Plaintiff's position is that she suffers from several physically debilitating conditions (for which she provides for her own care and treatment with home remedies and diet), but that she has employable skills, and needs to work for the money, so would like to work part time. She denies any mental health impairment and would oppose such a finding because she believes such a finding will impact her employability.

## IV. Commissioner's Response

Not surprisingly, the Commissioner relies on the lack of any demonstrable medical history to claim that Plaintiff's arguments are not supported by the record and that they constitute mere disagreements with ALJ Heller's factual

determinations.   ECF No. 15, p. 1.   The Commissioner concedes that Plaintiff has severe impairments, focusing instead on the impact of those impairments on Plaintiff's ability to work.   ECF No. 15, p. 5.

The Commissioner notes that Plaintiff's memorandum does not provide cogent arguments with citations to the record or relevant legal authority.   ECF No. 15, p. 5.   As a result, the Commissioner argues that Plaintiff has waived any substantive argument that is not addressed in her submissions.

The Commissioner also discounts Plaintiff's argument that ALJ Heller failed to consider all of her impairments.   ECF No. 15, p. 7.   The Commissioner accurately notes that ALJ Heller found that Plaintiff had a severe impairment, and, as a result, proceeded to step three of the sequential review process.   ECF No. 15, p. 8.   The Commissioner contends that so long as the impact of Plaintiff's impairments were considered in developing an RFC for Plaintiff, ALJ Heller did not commit error.   The Commissioner contends that ALJ Heller properly considered the impact of Plaintiff's impairment, exhaustively listing the daily activities which Plaintiff performs despite her impairments.   ECF No. 15, p. 8-9.

The Commissioner next contends that ALJ Heller properly considered Plaintiff's subjective complaints, but appropriately limited their impact because of the lack of objective medical evidence to support such complaints.   ECF No. 15, pp. 10-11.   The Commissioner contends that ALJ Heller properly considered the

evidence here, formulated appropriate hypotheticals for the vocational expert, and properly relied on the vocational expert in determining that there were jobs in the national economy which Plaintiff could perform despite her impairments. The Commissioner believes any argument by Plaintiff to the contrary is based on speculation and not supported by the record. ECF No. 15, p. 12. The Commissioner contends that ALJ Heller's conclusion that Plaintiff is not disabled is supported by substantial evidence and should be affirmed.

## V. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[4] The Court may not decide the facts anew, reweigh the evidence, or

---

4 "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357

substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239,

although the Court must scrutinize the entire record, consider evidence detracting

from the evidence on which the Commissioner relied, and determine the

reasonableness of the factual findings.    Lowery v. Sullivan, 979 F.2d 835, 837 (11th

Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).    Review is

deferential, but the reviewing court conducts "an independent review of the record."

Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that

the claimant is not only unable to do past relevant work, "but cannot, considering

[her] age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."    42 U.S.C. § 423(d)(2)(A).    A

disability is an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected

---

F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).    "A 'substantial evidence'
standard, however, does not permit a court to uphold the Secretary's decision by
referring only to those parts of the record which support the ALJ.    A reviewing court
must view the entire record and take account of evidence in the record which detracts
from the evidence relied on by the ALJ."    Tieniber v. Heckler, 720 F.2d 1251, 1253
(11th Cir. 1983).    "Unless the Secretary has analyzed all evidence and has
sufficiently explained the weight he has given to obviously probative exhibits, to say
that his decision is supported by substantial evidence approaches an abdication of
the court's 'duty to scrutinize the record as a whole to determine whether the
conclusions reached are rational.'"    Cowart v. Schweiker, 662 F.2d 731, 735 (11th
Cir. 1981) (citations omitted).

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R.    § 404.1520(a)(4)(i)-(v):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.   Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[5]

_____

5 An RFC is the most a claimant can still do despite limitations. 20 C.F.R. §404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining a claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment"* describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the Claimant's RFC and the claimant's past relevant work.   If the Claimant can still do past relevant work, the claimant is not disabled.   There is no need to proceed to step 5 of the process.

If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).   If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

---

rendered her decision.  *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3).

The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. Moore, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

A "mild" rating indicates that the claimant's functioning is "slightly limited;" a rating of "moderate" indicates a "fair" limitation; a "marked limitation" indicates claimant's functioning is "seriously" limited; and "extreme limitation" means claimant is "not able to function in this area" § 12.00(F)(2)(b), (c), (d), (e). The ALJ is to consider all "relevant medical and non-medical evidence" in evaluating a

claimant's mental disorder, including information about the claimant's daily activities at home and in the community. Id. § 12.00(F)(3)(a)–(b).

The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four. Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). But though the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitations in a hypothetical posed to the VE. Id. at 1180–81.

Before addressing the merits of Plaintiff's appeal, the undersigned makes a few preliminary observations. First, Plaintiff has failed to adhere to this Court's Order scheduling briefing in this case.  In that Order (ECF No. 12), the Court advised Plaintiff that she must "set forth Plaintiff's legal contentions and shall cite the record by page number for every factual contention."  ECF No. 12, p. 2. Although the Court recognizes that Plaintiff is proceeding pro se, this does not absolve her from following this Court's orders or procedural rules. See Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002) (noting that pro se litigants are required to follow procedural rules); see also Reed v. Fulton Cnty. Gov't, 170 F. Appx. 674, 676 (11th Cir. 2006) (noting that "pro se litigants are obligated to obey discovery orders) (citing Morton v. Harris, 628 F.2d 438, 440 (5th Cir. Unit B 1980)); Wilson v. Astrue, 249 F. App'x. 1, 5 (10th Cir. 2007). The undersigned probably could

affirm the Commissioner's decision on this basis alone.   However, "the Eleventh Circuit has a vigorous policy of resolving issues on the merits and not on procedural technicalities."    U.S. ex rel. Butler v. Magellan Health Servs., Inc., 74 F.Supp.2d 1201, 1214 (M.D. Fla. 1999). As a result, the undersigned has examined Plaintiff's case on the merits. In the future, Plaintiff must comply with procedural rules and orders.

Second, the Court clarifies that "although [it] make[s] some allowances for the pro se plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." Wilson, 249 F. App'x. at 5 (quoting Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)). Thus, the Court will not serve as Plaintiff's attorney.

Although this Court may not serve as Plaintiff's attorney, it still has a role in social security appeals, namely "to review the ALJ's findings of fact to determine if they are supported by substantial evidence and to determine whether the ALJ applied the correct relevant law." Preston v. Barnhart, 187 F. App'x. 940, 940 n.1 (11th Cir. 2006). Here, Plaintiff does not clearly assign errors to the Commissioner's final decision; instead, she indicates that his decision was wrong because she has a number of impairments and a number of disabling symptoms. ECF Nos. 13 and 16.

The issue before the Court is whether ALJ Heller properly developed the record here, and whether his decision denying Plaintiff's application for benefits was supported by substantial evidence.

The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007). Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. However, the ALJ is charged with developing a full and fair record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984). This duty exists even if the claimant is represented by counsel, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981), but rises to a special duty for an unrepresented claimant.[6] Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982) (noting that in carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire or, and explore for all the relevant facts"). In evaluating whether a case should be remanded for an ALJ's purported failure to fully

---

[6] Whether Plaintiff waived her right to counsel in this case is an open question. While she was afforded an opportunity to continue the hearing (which was difficult to schedule because of COVID) so that she could retain counsel, Plaintiff proceeded with the hearing assuming she could later retain counsel to assist in her appeal. Tr. 41. The Court need not decide the issue of whether Plaintiff knowingly and voluntarily waived her right to counsel, because ALJ Heller failed to satisfy his duty to marshal the evidence in this case under either the normal or heightened standard.

develop the record, courts consider whether there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant. Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); see also Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

## VI.  LEGAL ANALYSIS

ALJ Heller's findings and conclusions regarding Plaintiff's physical health and impairments are supported by substantial evidence and should be affirmed, as Plaintiff's position regarding her inability to perform medium work despite these physical impairments is not supported by any objective medical evidence.   Frankly, the only objective evidence presented in this case does not support Plaintiff's argument that she is medically disabled.   Because Plaintiff did not rely on traditional medical care there is simply no objective relevant medical history here other than the opinions of consulting experts, all of which would not support a finding of medical disability.

However, with respect to Plaintiff's impairment resulting from mental health limitations, ALJ Heller's opinion is not supported by a fully developed record or by substantial evidence and must be remanded for further proceedings.

### ALJ Heller Failed to Develop a Complete Record as to Plaintiff's Mental Health Impairments

As noted above, while Plaintiff bears the ultimate burden of proof as to the issue of whether she is disabled or not, ALJ Heller had the obligation to develop a full record.   Here, at least with respect to Plaintiff's mental health impairments, ALJ Heller failed in that obligation.

In reviewing the opinions of the psychological consultants retained by the State, ALJ Heller ultimately rejected, in part, the opinions of Dr. Theodore Weber, Dr. Madelyn Miranda-DeCollibus, and Dr. Kenneth Long because those consultants did not "have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions."   Tr. 20-21.   While ALJ Heller's conclusion in that regard compelled him to find that Plaintiff was more limited than as opined by the experts, ALJ Heller's view that the evidence received at hearing could or should impact the opinions of the retained experts is telling.   There was additional evidence that the experts should have properly considered in rendering their opinions.

The Court agrees that the evidence received at hearing supports a finding that Plaintiff is limited because of her mental health condition.   In fact, a review of the memoranda submitted by Plaintiff pre- and post-hearing is even further evidence of these challenges, especially with respect to her interaction with others and her ability to manage her affairs.   ECF No. 13; ECF No. 16; Tr. 70-81; 170-91; 229-59; 268-72; 274-78; 297-315.   Plaintiff's testimony and evidence submitted at hearing, as well as the various memoranda submitted by her in support of her claim, are

materials which should be considered in determining whether her mental health conditions limit her ability to obtain or retain employment.

In fact, if that question could properly be posed to the undersigned directly, the answer would be a resounding "yes," because those materials evidence the extreme challenges that Plaintiff faces in managing herself, staying on task, and communicating and interacting with others.   But the undersigned is not an expert in mental health.   And neither is ALJ Heller.   Those materials should be reviewed by a qualified mental health expert who can properly determine whether they support the conclusion that Plaintiff has a marked or extreme limitation in any of the relevant areas.   Thereafter, the expert consultant can render an opinion which may (or may not) be sufficient to support a finding of disability.   This is especially true given Dr. Long's conclusion that Plaintiff appeared to have significant psychological barriers to employment which "may decrease with improved health and/or proper and consistent treatment." Tr. 418.   It is undisputed that no such health improvements or treatment – let alone "consistent treatment" – has occurred.   These psychological barriers should be fully explored and understood prior to a determination that Plaintiff is not disabled.

Because the failure to obtain such updated opinions based on evidence that was considered by ALJ Heller was prejudicial to Plaintiff, remand is appropriate to permit such a review to occur.   Brown, 44 F.3d at 935 (holding that remand is

appropriate where there are evidentiary gaps in the record that result in unfairness or "clear prejudice" to the claimant); see also Graham, 129 F.3d at 1423.  Absent a remand, there is no way to know what impact the additional evidence may have on the opinions of the retained experts.

### ALJ Heller's Proffered Hypothetical was Incomplete

ALJ Heller was required to incorporate the results of the Psychiatric Review Technique (PRT) into his findings and conclusions.  Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005).  ALJ Heller at least attempted to do so.  Tr. 15-16. However, as noted above, ALJ Heller acknowledged that the consultant psychological experts would have benefited from reviewing the additional evidence. Thus, there is an open question whether ALJ Heller's unilateral review was sufficient.

Even assuming it was sufficient, there is a more pressing issue.  ALJ Heller concluded that Plaintiff had several "moderate limitations."  Tr. 13.  These included moderate limitation with respect to interacting with others; moderate limitation with respect to concentrating, persisting, or maintaining pace; and moderate limitation regarding adapting or managing oneself.  These limitations as a result of ALJ Heller's PRT should have been considered in developing Plaintiff's RFC.

In developing Plaintiff's RFC, ALJ Heller proffered a hypothetical to the VE during the administrative hearing:

> Mr. Harvey, I'd like you to assume a hypothetical individual of the Claimant's age, education and experience and further assume that the individual is limited to the range of medium work with the following additional limitations: They can more than frequently push and pull with the right foot or operate foot controls neither with the right foot. They can frequently climb ladders, ropes or scaffolds; frequently balance; frequently be exposed to unprotected heights; frequently be exposed to vibration and be exposed to no more than loud noise as that term is defined under the SCO. They're limited to simple, routine tasks and simple work-related decisions defined as no more than reasoning level 2 in the Dictionary of Occupational Titles. They can occasionally interact with supervisor, coworkers and the public and they can adapt to occasional and gradual changes in the work setting. Can that hypothetical individual perform any other work, and, if so, can you give me some examples, please?

This hypothetical does not refer to or incorporate any limitation resulting from Plaintiff's mental health conditions. Rather, it relies instead on the RFC developed by ALJ Heller. Further, ALJ Heller's written opinion does not expressly or implicitly include these further limitations in his discussion of the RFC discussed in his opinion. Tr. 22-23. There is no specific or implicit mention of Plaintiff's mental health limitations.

Because the hypothetical posed to the VE failed to include or otherwise implicitly account for Plaintiff's mental health impairments, the VE's testimony is not substantial evidence and cannot support ALJ Heller's conclusion that Plaintiff could perform significant jobs in the national economy. Thus, reversal is

appropriate, and, on remand the ALJ must pose a hypothetical question to the vocational expert which accounts for Plaintiff's mental health limitations in the relevant areas.  See  Winschel, 631 F.3d at 1180 (holding that failure by the ALJ to specifically or implicitly include or account for mental health impairments in the hypothetical proffered to the VE undermines the VE's testimony and compels reversal and remand).

## CONCLUSION

For the reasons stated above, the underlying record is incomplete as to Plaintiff's mental health impairments, and the opinion of the VE is not supported by substantial evidence because the proffered hypothetical was incomplete.  The undersigned respectfully RECOMMENDS that the Commissioner's decision be REVERSED AND REMANDED, and the Commissioner should be ordered to REMAND this case to the Administrative Law Judge for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk should be directed to close the file.

**DONE AND ORDERED** on August 30, 2022.


S/ Martin A. Fitzpatrick_____
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.